IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KiOR, INC.[1] | ) | Case No. 14-12514 (CSS) |
| | ) | |
|         Debtor. | ) | |
| | ) | |
| _____ | ) | |
| KiOR, INC., | ) | Adv. Proc. No. _____ (CSS) |
| | ) | |
|         Plaintiff, | ) | |
| | ) | |
|         v. | ) | |
| | ) | |
| STATE OF MISSISSIPPI, MISSISSIPPI | ) | |
| DEVELOPMENT AUTHORITY,[2] | ) | |
| | ) | |
|         Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DETERMINATION OF THE DISCHARGEABILITY OF ALLEGED DEBT OF THE STATE OF MISSISSIPPI, MISSISSIPPI DEVELOPMENT AUTHORITY (11 U.S.C. §§ 523(a)(2), 1141(d)(1)(A) and 1141(d)(6)(A), BANKRUPTCY RULE 4007)

For and in support of its complaint against the State of Mississippi, Mississippi

Development Authority (the "State"), debtor and debtor in possession KiOR, Inc. (the "Debtor"),

upon personal knowledge or upon information and belief as to those matters of which it lacks

personal knowledge, alleges as follows:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is KiOR, Inc. (2233). The above-captioned Debtor's mailing address is 13011 Bay Park Road, Pasadena, Texas 77507.

[2] Debtor has styled this complaint as against the "State of Mississippi, Mississippi Development Authority" because the most recently-filed Proof of Claim (Claim Docket No. 70) identifies the asserted creditor in this manner. However, neither this designation of the defendant nor anything else herein waives, impairs or precludes any claim or argument by the Debtor or other party in interest that the Mississippi Development Authority ("MDA") is not an arm or alter ego of the State of Mississippi.

## **Preliminary Statement**

1.      The Debtor files this complaint for a determination of the dischargeability of the debt alleged by the State, about which the State has asserted allegations of fraud in state court litigation.  The State has filed a proof of claim (Claim Docket No. 31, amended at Claim Docket No. 70) in the approximate amount of $78.5 million.

2.      The background of the State's filed claim and the state court litigation begins in 2007, when the Debtor was formed to develop and bring to market a renewable fuel technology so promising that investors committed over $600 million in debt and equity to its development. When the Debtor began to lay the groundwork to build its first-of-a-kind production facility, several states actively courted it, hoping to attract this investment.  Among these was the State of Mississippi, whose then-governor was a strong advocate of offering financial incentives to startups and development stage companies (particularly in the alternative energy industry) to locate their businesses in Mississippi, based on their potential to generate jobs and economic growth in the State.  A key factor that induced the Debtor to choose Mississippi over the competing states as the site for its project was the provision of a $75 million development loan. The State signed a commitment to provide these funds in 2010, and advanced them in 2011.

3.      The current governor has adopted a different policy from his predecessor, repudiating the previous policy of investing in non-established companies.  Specifically relevant here is that the current Mississippi Attorney General has commenced a lawsuit in connection with the MDA debt in the Circuit Court of Hinds County, Mississippi entitled *Jim Hood, Attorney General of the State of Mississippi, ex rel. The State of Mississippi, vs. Fred Cannon, Andre Ditsch, Gary L. Whitlock, Samir Kaul, Vinod Khosla, VK Services, LLC, Khosla Ventures,*

2

*LLC, Khosla Ventures Associates II, LLC, Khosla Ventures II, L.P., and Khosla Ventures III,*

*L.P.*, Civil Action No. 15-17 (the "<u>Mississippi State Court Action</u>").  In the Mississippi State

Court Action, the State alleges that certain current and former officers, directors and employees

of the Debtor, acting in their representative capacities, fraudulently induced the State to make the

loan.  The complaint does not name the Debtor as a defendant in the Mississippi State Court

Action only because, according to the complaint itself, the Debtor's bankruptcy case prevented it

from being named.  Instead, the complaint names as defendants the Debtor's Chief Executive

Officer, two current directors of the Debtor and a former employee of the Debtor, each

apparently acting in their capacity as such, as well as its largest investors, entities associated with

Mr. Vinod Khosla.

4.      The State's attempt to end-run the automatic stay – effectively accusing the

Debtor of wrongdoing without formally naming it as a defendant – fails to prevent the

Mississippi State Court Action from having a significant adverse effect on the Debtor's

reorganization efforts.[3]  To the extent applicable, section 1141(d)(6)(A) of the Bankruptcy Code,

incorporating sections 523(a)(2)(A) and (B), creates an exception to the discharge of corporate

debts pursuant to a plan of reorganization arising from a governmental unit's claims that it was

defrauded of money or in connection with the extension of credit.  Thus, if applicable, although

all pre-petition debts other than those expressly set forth in a confirmed plan of reorganization

would be fully discharged and satisfied, the Reorganized Debtor could still be liable for the

State's alleged $78.5 million debt.   This overhang jeopardizes the Debtor's effort to reorganize.

---

[3] Nothing in this adversary waives, impairs or precludes any right, claim or cause of action by the Debtor or other party in interest that the filing of the Mississippi State Court Action constitutes a violation of the automatic stay.

The Debtor expects that the Mississippi State Court Action will be vigorously contested and will almost certainly not be resolved within the plan confirmation timetable in the chapter 11 case.

5.      The Debtor commences this action pursuant to Rule 4007(a) of the Federal Rules of Bankruptcy Procedure to determine that the alleged claim of the State in this chapter 11 case is dischargeable under 11 U.S.C. § 1141(d)(1)(A), notwithstanding 11 U.S.C. §§ 1141(d)(6) and 523(a)(2)(A) and (B).

**<u>Jurisdiction and Venue</u>**

6.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and § 1334(a).  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (I) and (O).  In any event, and to the extent this adversary proceeding is non-core or otherwise outside of the final adjudicatory power of the bankruptcy court, the Debtor consents to entry of final orders or judgment by the bankruptcy court in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7008(a).

7.      Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a).

8.      This adversary proceeding is commenced pursuant to Rules 7001(6) and 4007 of the Federal Rules of Bankruptcy Procedure, and sections 105(a), 106(a)(2), 523(a)(2)(A) & B, 1141(d)(1)(A) and 1141(d)(6)(A) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

9.      Section 106(a)(1) of the Bankruptcy Code abrogates sovereign immunity as to sections 523 and 1141 of the Bankruptcy Code, which are the subjects of this action.  Section 106(a)(2) provides that "[t]he court may hear and determine any issue arising with respect to the application of such sections to governmental units."  11 U.S.C. § 106(a).  Further, as the State

4

has filed its proof of claim, it has consented to the jurisdiction of the Court to adjudicate all issues arising from that filed claim including all issues arising from the transactions that underlie such claim.

## The Parties

10.    Plaintiff is KiOR, Inc., the debtor and debtor in possession in this case, which was commenced by the filing of a voluntary petition under chapter 11 of the Bankruptcy Code on November 9, 2014 (the "Petition Date").

11.    Defendant is the State of Mississippi, Mississippi Development Authority.  The State of Mississippi is a governmental unit under the Bankruptcy Code.  The MDA represents itself to be an agency of the State of Mississippi, and hence a governmental unit under the Bankruptcy Code.

## Factual Allegations

### A.    General Background

12.    The Debtor and its wholly owned subsidiary KiOR Columbus, Inc. ("KiOR Columbus" and, together with the Debtor, the "KiOR Entities") are development stage, renewable fuels companies based in Pasadena, Texas and Columbus, Mississippi, respectively. The Debtor was founded in 2007 and KiOR Columbus was formed as a wholly owned subsidiary of the Debtor on October 6, 2010, in connection with the acquisition of property and the construction of a first-of-its kind production facility in Columbus, Mississippi (the "Columbus Facility").

13.    The Debtor's primary business is the development and commercialization of a ground-breaking proprietary technology designed to generate a renewable crude oil from

5

nonfood cellulosic biomass (e.g., trees, grasses, etc.), which can be refined into gasoline, diesel, and aviation fuels.  The fuels produced by the Debtor's highly specialized process are true hydrocarbon fuels that are molecularly consistent with their traditional petroleum-based counterparts.  However, the Debtor estimates that its cellulosic hydrocarbon fuels reduce lifecycle greenhouse gases by over 60% when compared to traditional fossil fuels.

14.    In mid-2012, the KiOR Entities completed construction of the Columbus Facility, an initial-scale production facility with a design capacity of approximately 500 bone dry tons of biomass feedstock per day.  When the Columbus Facility opened in 2012, it was the first production-scale plant in the United States to convert cellulosic non-food biomass into hydrocarbon gasoline and diesel.  KiOR Columbus operated the Columbus Facility during 2013, producing and selling cellulosic fuels that met certain contractual specifications.  The Columbus Facility produced just under 900,000 gallons of fuel in 2013.

15.    Prepetition, the Debtor faced numerous challenges in commercializing its technology and scaling its production, challenges that were exacerbated by unanticipated and exogenous regulatory and macro-economic changes that adversely affected the bio-fuels and renewable energy sector as a whole.  In January 2014, KiOR Columbus suspended operations at the Columbus Facility, and has since idled and decommissioned the Columbus Facility, to minimize ongoing costs.

16.    The Debtor's pre-bankruptcy secured liabilities consist primarily of several tranches of long-term secured debt held by affiliates of Alberta Investment Management Corp. ("AIMCO"), the KFT Trust, Vinod Khosla, Trustee (the "Trust"), VNK Management LLC ("VNK"), and Khosla Ventures III, LP ("KV III" and together with the Trust, VNK, the "Senior

Lender Parties"). As of the Petition Date, the Debtor owed approximately $77,000,000 in

principal and interest to AIMCO and approximately $159,000,000 in principal and interest to the

Senior Lender Parties.

**B.      The MDA Debt**

17.      The State has appeared as a creditor in this case, asserting that it is the largest

unsecured creditor of the Debtor, with an alleged claim of approximately $78.5 million. On

November 10, 2010, the Debtor and the State entered into a Memorandum of Understanding (the

"MOU") for the extension of a $75 million loan in connection with the development of the

Columbus Facility. The agreement culminated a process in which Mississippi and other states

offered competing incentive packages to induce the Debtor to locate its initial scale production

facility in their states. Ultimately, the Debtor determined that the incentives offered by

Mississippi were the most attractive, and proceeded to negotiate and document the terms of the

agreement in the MOU.

18.      On March 17, 2011, the State and KiOR Columbus executed the loan agreement

contemplated by the MOU. The State asserts that the Debtor guaranteed the loan. KiOR

Columbus made three draws on the loan, totaling $75 million, as follows: (1) $26,612,666.91 on

April 27, 2011; (2) $12,777,922.51 on June 10, 2011; and (3) $35,609,410.58 on December 20,

2011. KiOR Columbus made three payments of $1,875,000 each on December 20, 2012, June

27, 2013, and December 27, 2013. The State's proof of claim alleges that the loan balance is

$69,375,000 and that it is also owed other costs and interest in the amount of $8,017,063.36, plus

accruals. The alleged obligation of the Debtor for these amounts, and any other debts alleged by

the State to be owed by the Debtor, are referred to collectively as the "MDA Debt."

7

19.     Without altering the burden of proof, which remains on the creditor, no part of the MDA Debt is for money provided or credit extended based on the false pretenses, a false representation, or actual fraud by the Debtor or any authorized representative of the Debtor.

20.     Without altering the burden of proof, which remains on the creditor, no part of the MDA Debt is for money provided or credit extended based on the use of a statement in writing that was materially false, respecting the Debtor's or an insider's financial condition, on which the State reasonably relied, and that the Debtor or any authorized representative of the Debtor caused to be made or published with intent to deceive.

21.     Prior to filing the Mississippi State Court Action, neither the State nor the MDA advised the Debtor or, to the Debtor's knowledge, ever publicly disclosed that it believed that the MOU or the MDA loan was procured by means of fraudulent conduct of any nature by the Debtor, any authorized representative of the Debtor, or any other party.

**C.      The Debtor's Reorganization Efforts**

22.     Since 2013 the Senior Lender Parties, and since April 2014 the KFT Trust singlehandedly, have financed the KiOR Entities' continued operations, the idling of the Columbus Facility (including comprehensive decommissioning and clean-out of equipment and tankage at that site), and a sale, marketing, and potential reorganization process for the KiOR Entities conducted by Guggenheim Securities, LLC.   Although several entities expressed continuing interest in pursuing a transaction involving all, or a portion of, the assets of one or both of the Debtor or KiOR Columbus, not a single party has submitted a conforming offer to purchase either the Debtor's assets, the assets of KiOR Columbus, or both.

23.     The Debtor then entered into negotiations and reached agreement with the Trust, VNK and KV III (collectively, the "Plan Support Parties," or the "Khosla Parties"), providing for additional new money to fund a chapter 11 case and a stalking horse bid for the Debtor's assets, subject to higher and better bids pursuant to the Court-approved bidding procedures.

24.     On December 15, 2014, the Debtor filed KiOR, Inc.'s Chapter 11 Plan of Reorganization (as amended, the "Plan") (Doc. No. 149) and the Disclosure Statement for KiOR, Inc.'s Chapter 11 Plan of Reorganization, dated December 15, 2014 (the "Disclosure Statement") (Doc. No. 150). A first amended plan was filed on January 14, 2015 (Doc. No. 219). The Debtors will request a hearing on the adequacy of the Disclosure Statement in late March or early April 2015 with a hearing on confirmation of the Plan on or before May 30, 2015.

25.     The Plan will effectuate a reorganization that will preserve the Debtor's business and employees through a debt to equity conversion. Pursuant to the Plan, all of the Debtor's existing equity interests will be cancelled and the Debtor will issue new equity interests to the holders of the DIP Financing Claims and the Debtor's prepetition First Lien Claims in exchange for the cancellation of $16 million of such indebtedness (collectively, the "New Equity Interests"). In addition, entities affiliated with Mr. Khosla have committed to provide new funding in the approximate amount of $30 million as an Exit Facility. As set forth in other pleadings and the Debtor's publicly available SEC filings, the DIP Financing Claims and the First Lien Claims are held by entities that are insiders of the Debtor (as defined in §101 of the Bankruptcy Code), affiliated with Mr. Khosla. The Plan also provides for the assumption of certain executory contracts and leases (the "Assumed Contracts"). The issuance of the New Equity Interests, the assumption of the Assumed Contracts, a discharge under section

9

1141(d)(1)(A) of the Bankruptcy Code (the "<u>Discharge</u>"), and the Exit Facility collectively are referred to herein as the "<u>Restructuring Transaction</u>."

**D.      The Mississippi State Court Action**

26.      The State filed the Mississippi State Court Action on January 13, 2015, asserting claims against the Debtor's CEO, two current directors and a former employee, acting in their roles and capacities as such,  as well as against Mr. Khosla and certain entities affiliated with Mr. Khosla, based on the MDA Loan.[4] Two of the defendants, Mr. Khosla and KV III, are parties whose support is required to confirm the Plan.  The state court complaint states that the Debtor "is not a party in this action <u>because</u> it has filed for Chapter 11 bankruptcy protection in the United States District Court for the District of Delaware" (emphasis added).

27.      The gravamen of the Mississippi State Court Action is that the Debtor, through its various representatives, allegedly made a series of fraudulent misrepresentations to induce the State to provide the development loan under false pretenses.  The alleged misrepresentations concern both the Debtor's financial condition (such as its capacity to undertake the obligations in the MOU), and the commercial viability of its technology.

28.      Among other things, the State alleges that the Debtor and its representatives told representatives of the State that the Debtor had proved that it could achieve commercial yields and economics in its pilot or demonstration plants, that it was already a commercially viable operation, and that the Debtor would be able to meet its obligations under the MOU, knowing such statements to be false, and that such misrepresentations were ratified by Mr. Khosla and

---

[4] Only a redacted version of the complaint is publicly available.  The Debtor does not have access to the unredacted version, which was filed under seal.

others in meetings with Mississippi's then-Governor, Haley Barbour, and other state representatives. The state court complaint contends further that the Debtor's later-filed Securities Registration Statement (the "S-1") was materially misleading in its representations concerning the viability of the Debtor's technology and its readiness for commercial production and that the State relied on those representations.

29.     Based on these allegations, the complaint pleads claims for fraudulent misrepresentation, negligent misrepresentation, fraudulent omission, negligent omission, civil conspiracy, aiding and abetting, and respondeat superior liability against venture funds associated with Mr. Khosla. The State alleges that the loan balance is $69,375,000 and that it is also owed other costs and interest in the amount of $8,017,063.36, plus accruals. It also requests the imposition of punitive damages.

30.     The Debtor strongly denies each of the allegations of impropriety set forth in the Mississippi State Court Action. In particular, the Debtor and its officers and directors deny that any fraudulent representations or omissions were made by it or anyone on its behalf, intentionally or otherwise. Further, there was no reliance nor could there be reasonable reliance by the State upon the alleged misrepresentations or omissions.   In fact, some of the alleged representations that the State alleges were false and upon which it purported to rely were made after the agreements were executed and even after money was advanced.

**E.     The Impact of the Mississippi State Court Action on Reorganization**

31.     As described above, the Restructuring Transaction under the Plan includes the issuance of the New Equity Interests, the assumption of the Assumed Contracts, the Discharge, and the Exit Facility. Integral to the confirmation and implementation of the Plan is, among

11

other things, the Plan Support Parties' consent to the treatment of their secured claims by conversion to New Equity Interests and/or participation in the Liquidating Trust to be established under the Plan, and the provision of the Exit Facility by the Plan Support Parties or other parties related to Mr. Khosla.

32.    The Discharge is also integral to the Restructuring Transaction.  The Plan provides that pursuant to section 1141(d)(1) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Equity Interests, and Causes of Action of any nature whatsoever, and the Confirmation Order shall be a judicial determination of such discharge, subject to the Effective Date occurring (as all these capitalized terms are defined in the Plan).  As with any reorganizing corporation, this discharge of indebtedness is a cornerstone of the Debtor's emergence from bankruptcy and absolutely critical to its fresh start.

33.    Section 1141(d)(6)(A) of the Bankruptcy Code provides that, "[n]otwithstanding [section 1141(d)(1)], the confirmation of a plan does not discharge a debtor that is a corporation from any debt . . . of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit . . . ."  In turn, section 523(a)(2) excepts a debt from discharge if that debt is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing— (i) that is materially false; (ii) respecting the debtor's

or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable

for such money, property, services, or credit reasonably relied; and (iv) that the debtor

caused to be made or published with intent to deceive."

11 U.S.C. §§ 1141(d)(6)(A), 523(a)(2)(A), (B).

34.    The Debtor believes that the State opposes confirmation of the Plan, as it has

opposed virtually all substantive relief in the Debtor's bankruptcy case.  The State identified the

Mississippi State Court Action in its objection to the Debtor's Disclosure Statement as a material

proceeding that must be fully described in the Disclosure Statement.  While there is very little

case law discussing this section, at least one court has held that section 1141(d)(6)(A) is self-

effectuating; that is, it could remain a latent threat to full dischargeability and, unlike how it is

implemented in an individual, consumer case via Bankruptcy Rule 4007, does not require that

the putative claimant take any action or provide any notice during the chapter 11 case of its

intent to hold the debtor or reorganized debtor liable following the discharge in order to preserve

the claim that its debt is excepted from the discharge.[5]  Accordingly, absent a formal

determination of dischargeability, the State may contend, well into or after the adjudication of

the Mississippi State Court Action and following the confirmation and effectiveness of any

chapter 11 plan for the Debtor, that section 1141(d)(6)(A) nevertheless permits it to assert the

claims currently asserted in the Mississippi State Court Action against the Reorganized Debtor

---

[5] Nothing herein waives, impairs or precludes the Debtor or any party in interest from asserting that the MDA Debt is discharged for, *inter alia*, the State's failure timely to file an action, pleading, or claim asserting that its debt was non-dischargeable.

13

and its assets, even if the State takes no action in the bankruptcy case to assert or preserve such a right.

35.     Such an outcome could render the Discharge ineffective against any liability of the Debtor to the State of the kind specified in section 523(a)(2)(A) or (B), and the Reorganized Debtor could remain exposed to such claims.  Based on its filed proof of claim, the Reorganized Debtor could be exposed to the State's alleged claim of approximately $78.5 million and perhaps more immediately due and owing indebtedness, notwithstanding its reorganization and resultant discharge.  Such a result would likely be fatal to the Reorganized Debtor and completely at odds with the entire concept behind and construct for chapter 11 corporate reorganizations as set forth in the Bankruptcy Code and Bankruptcy Rules.

36.     The risk of such an outcome creates present barriers to the Exit Facility and the Plan becoming effective.  It jeopardizes the ability of the Reorganized Debtor to perform under its confirmed plan and further hampers its ability to obtain the third-party financing that is projected to be required after the Exit Financing is consumed.  Further, the prospective pass-through of the potential liability against the Reorganized Debtor may result in the termination of support for the Plan by the Plan Support Parties, thereby precluding consummation of the Plan unless a higher and better offer is made by an entity willing to assume the risk of crippling post-confirmation liability to the State.  These ramifications, at least, also potentially implicate the Court's determination that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).

RLF1 11656742v.1

## CLAIM FOR RELIEF

**(For a Determination of Dischargeability – 11 U.S.C. §§ 106(a)(2), 1141(d) and 523(a)(2)(A)-(B) and Bankruptcy Rule 4007)**

37.     The Debtor hereby realleges and incorporates each of the above paragraphs as though fully set forth herein.

38.     Bankruptcy Rule 4007(a) provides that "[a] debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."  Bankruptcy Rule 4007(b) provides that "a complaint other than under § 523(c) may be filed at any time."

39.     Without altering the burden of proof, which remains on the creditor, the Debtor further alleges that no part of the MDA Debt is of a kind specified in 11 U.S.C. § 523(a)(2)(A), because there was no money provided or credit extended based on false pretenses, a false representation, or actual fraud.

40.     Without altering the burden of proof, which remains on the creditor, the Debtor further alleges that no part of the MDA Debt is of a kind specified in 11 U.S.C. § 523(a)(2)(B), because there was no money provided or credit extended based on the use of a statement in writing that was materially false, respecting the Debtor's or an insider's financial condition, on which the State reasonably relied, and that the Debtor caused to be made or published with intent to deceive.

41.     The MDA Debt is fully dischargeable under 11 U.S.C. § 1141(d)(1)(A), and is not excepted from discharge pursuant to 11 U.S.C. § 1141(d)(6).

WHEREFORE, the Debtor prays for the entry of an order and judgment determining that the MDA Debt is fully dischargeable under 11 U.S.C. § 1141(d)(1)(A), and is not excepted from

discharge pursuant to 11 U.S.C. § 1141(d)(6), and awarding such other and further relief as the

Court deems just and proper.


Date:    March 16, 2015                    */s/ John H. Knight*
         Wilmington, Delaware            John H. Knight (No. 3848)
                                         Michael J. Merchant (No. 3854)
                                         Amanda R. Steele (No. 5530)
                                         RICHARDS, LAYTON & FINGER, P.A.
                                         920 N. King Street
                                         Wilmington, Delaware 19801
                                         Telephone:  302-651-7700
                                         Facsimile:  302-651-7701
                                         Email: knight@rlf.com
                                                merchant@rlf.com
                                                steele@rlf.com

                                                 -and-

                                         Michael G. Bongiorno (Massachusetts Bar No. 558748)
                                         Peter J. Kolovos (Massachusetts Bar No. 632984)
                                         George W. Shuster Jr. (Massachusetts Bar No. 647306)
                                         WILMER CUTLER PICKERING HALE AND DORR LLP
                                         60 State Street
                                         Boston, Massachusetts  02109
                                         Telephone: (617) 526-6000
                                         Facsimile: (617) 526-5000
                                         Email: michael.bongiorno@wilmerhale.com
                                                george.shuster@wilmerhale.com
                                                peter.kolovos@wilmerhale.com

                                         **ATTORNEYS FOR DEBTOR**
                                         **AND DEBTOR IN POSSESSION**